IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| **HERBERT HARRIS** | § | |
| | § | |
| **V.** | § | **NO. 1:05-CV-24** |
| | § | |
| **J.B. HUNT TRANSPORT, INC., THE** | § | |
| **J.B. HUNT TRANSPORT SERVICES** | § | |
| **HEALTH AND WELFARE APPEALS** | § | |
| **COMMITTEE, PROVIDENCE** | § | |
| **INSURANCE & ADMINISTRATIVE** | § | |
| **SERVICES, THE J.B. HUNT TEXAS** | § | |
| **INJURY BENEFIT PLAN, and BLUE** | § | |
| **CROSS / BLUE SHIELD OF TEXAS** | § | |

## MEMORANDUM OPINION RE ORDER GRANTING
## MOTION FOR PROTECTIVE ORDER

Plaintiff asserts a cause of action governed by ERISA.[1]  Specifically, plaintiff

sues to recover benefits provided by The J.B. Hunt Texas Injury Benefit Plan ("Plan")

for on-the-job injuries.[2]  Prior to suit, the Plan Administrator, J.B. Hunt Transport

Services, Inc., determined that plaintiff's injury (heart attack) was not work-related.

Based on that factual finding, it denied plaintiff's claim.

---

[1]     Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (2000).

[2]     Plaintiff also asserts a cause of action under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 29 U.S.C. §§ 1161-1169 (2000). That cause of action is not relevant to the discovery dispute which this opinion addresses.

Plaintiff's counsel gave notice of intent to depose a Plan representative.  That notice listed various subjects of the proposed examination, as required by Rule 30(b)(6), Federal Rules of Civil Procedure.[3]  The Hunt defendants argue that the notice is objectionable because it seeks to discover information outside the record considered by the administrator.  They move for a protective order quashing the deposition notice.

Both parties submitted written arguments, and the matter is ripe for decision.

## I.  DISCOVERY GENERALLY

Federal trial courts embrace a policy of liberal discovery.  <u>Hickman v. Taylor</u>, 329 U.S. 495, 506 (1947); <u>United States v. McWhirter</u>, 376 F.2d 102, 106 (5th Cir. 1967).  Rule 26(b)(1) codifies this policy by providing that parties to federal litigation may obtain discovery of "*any matter . . . relevant to the subject matter involved in the*

---

[3]     The notice specified subjects on which examination was requested as:

(1) the nature of the "administrative record" upon which the J.B. Hunt Texas Injury Plan relied to deny Plaintiff work injury benefits; this inquiry will extend to, but not be limited to:
   a. the steps taken in the process of evaluating Mr. Harris' claim;
   b. the nature and type of information provided to various in-house and external evaluators of Mr. Harris' condition, and its cause and prognosis;
   c. the name(s) and qualifications of persons involved in making a determination on Mr. Harris' claim.
   d. the nature of any code, notation, reference, acronym, protocol, abbreviation, summary of discussion, descriptor, or other part of the administrative record which is not self-evident to a person not familiar with the inner workings and administrative processes of the J.B. Hunt Texas Injury Plan;
(2) whether the Administrator of the J.B. Hunt Texas Injury Plan has any financial interest in whether or not a claim is denied; in other words, the extent to which there is a conflict of interest on the part of the decision-maker.

Pl.s' Resp., Ex. A.

*action*."  Moreover, discovery is not limited to admissible evidence.  When "*discovery appears reasonably calculated to lead to discovery of admissible evidence*," the rule allows it.

Local Rules of Court provide guidance for evaluating whether a particular piece of information is relevant to the claim or defense of any party.  Local Rule CV-26(d) contains an illustrative, non-exclusive list which includes:

(1)    Information that would not support the disclosing parties' contentions;

(2)    Persons who, if their potential testimony were known, might reasonably be expected to be deposed or called as a witness by any of the parties;

(3)    Information likely to have an influence on or affect the outcome of a claim or defense;

(4)    Information that deserves to be considered in the preparation, evaluation or trial of a claim or defense; and

(5)    That reasonable and competent counsel would consider reasonably necessary to prepare, evaluate or try a claim or defense.

## II. ERISA REVIEW

ERISA was enacted in part to preserve, protect and make secure retirement, health, disability and other contractually-defined benefits offered by employers to their employees through established plans.  See 29 U.S.C. § 1001(a) (2000) (declaring ERISA's purpose for regulating private welfare and benefit plans).  ERISA refers to such plans as "employee benefit plans,"[4] and given Congress's motivation for enacting ERISA, it follows that such plans must operate for the benefit of employees,

---

[4]    Title 29 U.S.C. § 1002(3) (2000) provides:

The term "employee benefit plan" or "plan" means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

Page 3 of 18

and not for the benefit of self-interested plan sponsors and insurers.  Id.  Indeed,

ERISA expressly imposes a duty on plan administrators to act as a fiduciary for plan

participants.  See 29 U.S.C. §§ 1001(b), 1021 (2002).

ERISA does not bar or prevent plan sponsors, their subsidiaries and insurers

from serving as fiduciary administrators.  Indeed, ERISA jurisprudence suggests that

such practice may be the norm rather than the exception.  When such an administra-

tor denies a claim for benefits, it is foreseeable, if not inevitable, that an unsuccessful

claimant will contend that the administrator breached its fiduciary duty to the

claimant in favor of its own conflicting interest of saving costs.  This, in turn,

precipitates an action for judicial review as expressly authorized by ERISA.  See 29

U.S.C. § 1132(a).

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme

Court decided that in light of an administrator's fiduciary duty and ERISA's legisla-

tive history, reviewing courts must be guided by evolving principles of trust law when

determining the standard of review of administrator action.  Id. at 111.  The court

ascertained that settled trust principles establish a deferential standard of review

when a trustee exercises discretionary powers.  A fiduciary trustee's interpretation

and decision will not be disturbed if reasonable.  Therefore, the court's control is

limited to preventing abuse of discretion.  However, when a trustee operates under a

possible or actual conflict of interest, that conflict must be weighed as a factor when

deciding whether there was an abuse of discretion.  Id. at 115.

The Plan at issue in this case gives the administrator discretionary authority to determine eligibility for benefits and to construe the plan's terms.  Thus, the deferential standard of review approved in <u>Firestone</u> applies.  The governing circuit court of appeals established a two-step analytical model for evaluating abuse-of-discretion in <u>Wildbur v. ARCO Chemical Co.</u>, 974 F.2d 631, 637-38 (5th Cir. 1992).  That protocol is reprinted in the note.[5]

Relevant to this case is the second step, evaluating the administrator's exercise of discretion, with respect to which the court instructs:

> Three factors are important in this analysis:
>
> (1)   the internal consistency of the plan under the administrator's interpretation,
>
> (2)   any relevant regulations formulated by the appropriate administrative agencies, and
>
> (3)   the *factual background of the determination and any inferences of lack of good faith.*

<u>Id.</u> at 638 (emphasis added). Regarding the third factor, the court envisioned a sliding scale for evaluating lack of good faith inferences.  The greater the suspicion of an administrator's partiality, the "more penetrating"  should be the court's review.

---

[5]      In <u>Wildbur</u>, the court of appeals established the following framework for addressing abuse of discretion in ERISA cases:

> Application of the abuse of discretion standard may involve a two-step process.  First, a court must determine the *legally correct interpretation* of the plan.  If the administrator did not give the plan the legally correct interpretation, the court must then determine whether the administrator's decision was an *abuse of discretion.*

974 F.2d at 637 (citations omitted and emphasis added).

Id.  Conversely, the lesser the degree of an administrator's conflict, the greater should

be the degree of deference, i.e., forgiving inferences.

Firestone and Wildbur concerned challenges to an administrator's *interpretation*

of an ERISA-governed plan.  However, courts employ the same sliding scale standard

when determining how much deference to afford a conflicted administrator's *factual*

*determinations* that resolve merits of a claim.  Vega v. National Life Ins. Servs., Inc.,

188 F. 3d. 287, 297-300 (5th Cir. 1999).  The court cites with apparent approval a

case from the Fourth Circuit to illustrate how courts should apply the sliding scale

standard.  Specifically, courts must lessen the deference given to an administrator's

determination "*to the degree necessary to neutralize any untoward influence resulting from the*

*conflict*."  Id. at 296 (citing Doe v. Group Hospitalization & Medical Servs., 3 F.3d

80, 86 (4th Cir. 1993)) (emphasis added).

## III.  ERISA DISCOVERY

The court's independent survey of relevant jurisprudence reconfirms a studied

observation that "[t]here is a fundamental philosophical difference about discovery in

ERISA benefits cases."  John V. Tucker, *What Is the Appropriate Standard of Review?,* in

Jayne E. Zanglein & Susan J. Stabile, *ERISA Litigation* 349, 377 (Bureau of Nat'l

Affairs 2003).  The circuit courts of appeal are divided.  Id.  The Fifth Circuit has not

written definitively.  District courts within the circuit have assorted perspectives.[6]

Finally, as the parties' written arguments disclose, judges within this district may

differ on the availability and extent of discovery.[7]  Absent binding precedent or a

clear consensus, a vigorous and principled analysis adding fresh perspective may serve

interests of justice better than simply choosing sides.

First, none of the Fifth Circuit cases prominently cited in the Hunt defen-

dants' briefs is directly on point.  <u>Wildbur</u>, <u>Vega</u>, and their progeny, <u>Estate of

Bratton</u>[8] and <u>Gooden v. Provident Life & Accident Ins. Co.</u>,[9] all considered whether

evidence extrinsic to the administrative record could be *used at trial*.  None decided

whether extrinsic evidence could be *discovered*.  These cases focused on whether

certain evidence was *admissible*, not on whether that evidence was *reasonably calculated

to lead to the discovery of admissible evidence.*

---

[6]     For varying views as to the availability and extent of discovery in
ERISA cases, <u>see</u>, <u>e.g.</u>, <u>Barnickel v. UNUM Life Ins. Co. of Am.</u>, No. 04-0633, §
I/4, 2004 U.S. Dist. LEXIS 22441 (E.D. La. Nov. 5, 2004); <u>Chapman v. Prudential
Life Ins. Co.</u>, 267 F. Supp. 2d 569 (E.D. La. 2003); <u>Griffin v. Raytheon Co. Long
Term Disability Plan, No. 588</u>, No. 3:04-CV-2179-D, 2005 U.S. Dist. LEXIS 18720
(N.D. Tex. Aug. 31, 2005).  For a discussion of these cases, <u>see infra</u> § IV., at
11-12.

[7]     <u>Compare</u> Mem. & Order Den. Req. Dep. at 3-4, <u>Staas v. TXU Corp.</u>, No.
9:04-CV-12 (E.D. Tex. Sept. 29, 2004) (Clark, J.) (holding discovery outside
administrative record not permitted with respect to a reviewing physician's
credibility, biases and employment relationship with an administrator because
"*there is no exception for the use of evidence outside the administrative record
to demonstrate that an administrator acted in a biased, partial or unreasonable
manner*"), <u>with</u> Mem. Op. & Order at 2-3, <u>Kujawa v. Metropolitan Life Ins. Co.</u>, No.
1:04-CV-546 (E.D. Tex. Feb. 1, 2005) (Heartfield, C.J.) (permitting discovery
regarding "the process by which the claim was handled" and "the manner in which
the claim was reviewed" because it would "*provide both parties with a clear
understanding of what the administrator actually considered*" and would "*aid the
court in its ultimate inquiry*" as to whether "*the Plan administrator abused its
discretion in terminating plaintiff's benefits.*")

[8]     215 F.3d 516 (5th Cir. 2000).

[9]     250 F.3d 329 (5th Cir. 2001).

These cases illuminate the discovery issue, however, because there surely exists a close correlation between admissible evidence and the range of evidence reasonably calculated to lead to admissible evidence.  When the range of admissible evidence is narrow, the range of extrinsic evidence reasonably calculated to lead to discovery of admissible evidence is also narrow.  Logically, no discovery whatsoever would be appropriate if the *only* admissible evidence in an ERISA case were the administrative record.  The record is what it is, and no extrinsic evidence would lead to discovery of other admissible evidence simply because no other evidence would be admissible.

However, the administrative record is *not* the only admissible evidence in an ERISA case.  In Wildbur, the court observed that

> well-established criteria for evaluating a benefit determina-
> tion under an abuse of discretion standard makes [sic] it
> obvious that some evidence other than that contained in the
> administrative record may be relevant at both steps of this
> process of judicial review.

974 F.2d at 638.  The court envisioned scenarios where much relevant information would not be in the administrative record.  Ultimately, and in no unmistakable terms, the court ruled:

> [W]e now make manifest that a district court is not confined
> to the administrative record in determining whether, under
> our analytical framework, a plan administrator abused his
> discretion in making a benefit determination.

Id. at 639.

As mentioned, <u>Wildbur</u> established a two-step analytical protocol.  <u>See</u> <u>supra</u> note 5, at 5.  <u>Wildbur</u>  involved a Step 1 analysis, i.e., whether the plan administrator applied a legally correct interpretation of the plan.  <u>Vega</u> adapted the <u>Wildbur</u> model to factual findings and involved both steps.  Specifically, <u>Vega</u> considered first whether the evidentiary record adequately supported the administrator's material factual determinations that resolved merits of the claim, and second, whether the administrator abused its discretion with respect to those findings.

At the first step, the court reaffirmed its "long-standing rule that when performing the appellate duties of reviewing decisions of an ERISA plan administrator, the district court may not engage in fact-finding."  188 F.3d at 295.  The court logically concluded that district courts cannot stray from the administrative record when assessing whether the administrator's decision is based on evidence that supports its decision.[10]  <u>Id</u>. at 299.   Unequivocally, the court stated:

> [W]e will not permit the district court or our own panels to consider evidence introduced to resolve factual disputes with respect to the merits of the claim when that evidence was not in the administrative record.

<u>Id.</u> at 300.  The court's principal motivation was to establish procedural rules encouraging parties to resolve their disputes at the *administrator's level*.  If evidence to

---

[10]      The court recognized an exception for extrinsic evidence "explaining medical terms and procedures relating to the claim." <u>Id.</u> at 299.

resolve disputed material facts were presented in *district court*, the administrator's review of claims would be circumvented.  Id. at 300.

At the second step, <u>Vega</u> addressed the degree of deference that the court owed to the administrator's factual determinations.  The administrator was a separate but wholly-owned subsidiary of the plan's insurer.  That relationship had not been considered previously.  The court decided that this legal relationship demonstrated at least a "minimal basis for a conflict."  Further, it justified an assumption that the relationship was "something more than purely contractual."  This permitted the court to presume that the administrator's decision "was to some degree, self-interested." However, in absence of "evidence with respect to the degree of the conflict," the court concluded that "it is appropriate to review the administrator's decision with only a *modicum less deference* than we otherwise would."  Id. at 301 (italics added).

A third point, uncontroversial but important, is that the administrative record and related materials are discoverable.  <u>Vega</u>, 188 F.3d at 299.  ERISA itself contains a disclosure requirement whereby a claimant is entitled to obtain access to and copies of relevant plan provisions and "all documents, records and other information relevant to the claimant's claim for benefits."  <u>See</u> 29 C.F.R. § 2560.503-1(j) (2005). Fifth Circuit case law makes clear that a plan administrator has the obligation to identify the evidence in the administrative record.  <u>Vega</u>, 188 F.3d at 299; <u>Barhan v. Ry-Ron Inc.</u>, 121 F.3d 198, 201 (5th Cir. 1997).  A convenient and practical solution

is reflected in a recent district court case, <u>Griffin v. Raytheon Co. Long Term
Disability Plan No. 588</u>, No. 3:04-CV-2179-D, 2005 U.S. Dist. Ct. LEXIS 18720
(N.D. Tex. Aug. 31, 2005).  There, the court – without objection – ordered the
administrator to provide the claimant with an affidavit stating that it had produced a
true, correct, and complete copy of the administrative record in the case, including
the administrative services agreement and the administrator's claims guidelines for
the time period relevant to the suit.  <u>Id.</u> at *2.

## IV.  DISCUSSION AND ANALYSIS

The present action challenges the administrator's determination of a material
and historic *fact issue*, <u>viz</u>., whether the plaintiff's unfortunate heart attack was work
related.  Consequently, at trial, this court must look solely to the administrative
record to determine whether the administrator's finding is based on evidence clearly
supporting the finding.  However, the court must then determine the degree of
deference to give that finding.  The Hunt defendants stipulate that J.B. Hunt
Transport Services, Inc., is the Plan's administrator, and suggest that "the amount of
conflict of interest is undisputed."  Def.'s Reply at 4 (Nov. 8, 2005).  This suggests
that the Hunt defendants concede that the Plan's administrator is conflicted to some
degree.

The *amount* of conflict of interest is not self-evident.  First, "J.B. Hunt Trans-
port Services, Inc." is not a party to the suit, and the record does not address the

relationship between it and the named Hunt defendants.  Second, it is not clear from the record whether the Hunt defendants exercise control over day-to-day decisions of the administrator.

Without additional evidence on these issues, the court can assume – as did Vega – only a minimal basis for conflict which, in turn, warrants only a modicum less deference than the court would normally give.  But leaving the plaintiff – and ultimately the court – to merely speculate as to the degree of conflict does not serve interests of justice, and may affirmatively prejudice the plaintiff who, through discovery, might produce evidence of a greater degree of conflict.  Consequently, unless the parties stipulate as to the extent of the conflict, or agree upon the degree of lesser deference necessary to neutralize untoward influence resulting from the conflict, the court should permit plaintiff to engage in discovery reasonably calculated to lead to admissible evidence on that issue.

Although this conclusion seems obvious, other district courts within the circuit appear less sanguine about the proposition.  In Chapman v. Prudential Life Ins. Co. of America, 267 F. Supp. 2d 569 (E.D. La. 2003), while granting an administrator's motion for summary judgment, the court addressed the circuit's sliding-scale test, correctly noting that "*[j]ust how far the scale slides depends upon the amount of evidence the plaintiff brings forward showing a conflict of interest.*"  Id. at 578 (emphasis added).

However, the court seemed to assume that the plaintiff was prohibited as a matter of

law from developing such evidence.  The court stated:

> It is difficult to prove a conflict of interest beyond the
> inherent conflict of the 'self-interested insurer' when the
> Court is confined to the evidence in the administrative
> record.

Id.

A similar result was reached in Barnickel v. Unum Life Ins. Co. of America,

No. 04-0633, § I/4, 2004 U.S. Dist. LEXIS 22441 (E.D. La. Nov. 5, 2004).  There, a

plaintiff sought to supplement the administrative record with a transcript from a

segment of CBS's "60 minutes."  Id. at *5.  That exposé allegedly revealed that an

administrator interpreted a plan so that no claimant ever fit within the plan's

definition of disability.  The court reasoned that the case involved the administrator's

factual determination, and that the court therefore could not stray from the adminis-

trative record.  Id. at *12.

Finally, in Griffin, 2005 U.S. Dist. 18720, the court held that because its

review of the administrator's decision was restricted to consideration of the adminis-

trative record, the plaintiff was not entitled to discovery concerning accuracy and

completeness of the claim record, or of claims procedures, or of safeguards used to

ensure consistency.  Id. at *8.  Addressing the plaintiff's request for additional

discovery regarding the administrator's conflict of interest, the court concluded that

no circuit case has ever authorized extensive discovery.  The court reasoned that

Page 13 of  18

large-scale discovery concerning an administrator's possible conflict is unnecessary when "the reviewing court is structurally limited in the scope of evidence it may consider." Id. at *14.  The court also opined  – based on its review of the circuit's sliding scale cases – that in any event, the only relevant evidence is that which establishes an *apparent* conflict.  Id. at **11-13.  Thus, circuit cases referring to a need for "evidence" of a conflict should be construed as referring only to need for proof of an *apparent* conflict.  Id. at **13-14.  Ultimately, the court permitted no further discovery because an earlier order of a magistrate judge permitted plaintiff to discover evidence sufficient to establish an apparent conflict.

Of these three cases, only Griffin dealt directly with discovery.  Barnickel makes no reference to the sliding-scale test whatsoever.  Chapman was a summary judgment proceeding wherein the plaintiff apparently made no request to discover sliding-scale evidence.  Consequently, only Griffin deserves further critical review.

Griffin is not binding precedent, and after respectful consideration, the undersigned declines to accept portions of it as persuasive.  First, Griffin is uncon-vincing when suggesting that only evidence of apparent conflict is relevant.  Justice O'Connor's opinion in Firestone expressly mentions both "possible" and "actual" conflicts.  489 U.S. at 115.  Supreme Court justices, and especially Justice O'Connor, choose their words carefully and deliberately.  That Justice O'Connor saw fit to mention both types of conflict suggests analytical significance.  If so, one might

logically reason that an actual conflict might weigh differently on the sliding scale than a mere apparent conflict.

Second, circuit cases referring to a need for "evidence" of a conflict cannot reasonably be viewed as lamenting only lack of evidence of an apparent conflict. Those cases already had evidence of an apparent conflict; what was missing was evidence to flesh out the extent of the conflict, such as precise relationships and day-to-day control, or other indicia of the degree (if any) of conflict.  In <u>MacLachlan v. ExxonMobil Corp.</u>, 350 F.3d 472, 479  (5th Cir. 2003), the court stated:

> The degree to which a court must abrogate its defer-ence to the administrator depends on the extent to which the challenging party has succeeded in substantiating its claim that there is a conflict. "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."

(quoting <u>Vega</u>, 188 F.3d at 297*).*  The court further quoted the district court's decision which concluded that the plaintiff's allegation of a conflict of interest did not require lessening of deference to the administrator because:

> [Plaintiff] has not presented evidence to show that the plan administrator *was in fact influenced* by such conflict . . . .

<u>Id.</u> at 479 (emphasis added).  One cannot discern from such plain language a rule establishing that the sliding scale measure of abuse of discretion is fully informed by proof of only an apparent conflict.

Finally, to hold that the conflict inquiry ends when evidence establishes an apparent conflict emasculates the circuit's sliding-scale test.  Under <u>Vega</u>, the end

result almost always would be the application of great deference, or only a modicum

less deference.  A more penetrating review to the degree necessary to neutralize

untoward influence resulting from the conflict would become illusory.  Plaintiffs

always would find themselves in the same trap sensed by Judge Duval in <u>Chapman</u>.

He suspected a "glaring" conflict resulting from the *possibility* that the administrator's

success depended on the number of claims denied, but felt constrained nevertheless

to apply the forgiving "modicum less deference" standard because the only evidence

of conflict was general, i.e., the inherent (apparent) conflict of a "self-interested

insurer."  <u>Chapman</u>, 267 F. Supp. 2d at 578.

This analysis persuades the undersigned that when there is at least a minimal

basis for a conflict on the part of an administrator, courts must permit discovery

relating to the degree of conflict.[11]  Under settled discovery rules, inquiries reasonably

calculated to lead to discovery of evidence of that degree are appropriate.

## V. APPLICATION

Turning now to specific discovery requests at issue here, the court concludes

that Items 1(a), 1(b) and 1(d) of plaintiff's deposition notice are discoverable under

ERISA's statutory general disclosure provision.  Item 1(c) represents an inquiry

---

[11]     Courts should exercise caution in assuming automatic conflicts.  <u>See</u>
Judge Smith's perceptive and eloquent observation in <u>MacLachlan v. ExxonMobil
Corp.</u> that it is "less than patently obvious that employers [who interpret and
administer their own plans] would systematically benefit from a denial of
meritorious claims."  350 F.3d at 479 n.8.

reasonably calculated to lead to the discovery of admissible evidence relevant to the sliding-scale test.  <u>See</u>, <u>e.g.</u>, <u>Bedrick v. Travelers Ins. Co.</u>, 93 F.3d 149 (4th Cir. 1996) (allowing depositions of administrator's doctors, which led to discovery that doctors did not have qualifications stated by the administrator in support of its denial).  Item 2 clearly relates to the degree of the administrator's conflict.  Hence, all items listed in the deposition notice are appropriate areas of inquiry, even though not all are contained in the administrative record.

A final comment may assist the parties.  Given the limited and deferential nature of judicial review, boundless discovery is inappropriate in ERISA actions.  In <u>Vega</u>, the court stated that review of an administrator's decision "*need not be particularly complex or technical*."  188 F.3d at 297.  In <u>Griffin</u>, Judge Fitzwater understandably resisted extensive discovery.  The two Louisiana cases, <u>Chapman</u> and <u>Barnickel</u>, shared that same view, namely, that ordinary tort litigation discovery is inappropriate in specialized and more limited ERISA actions.

The undersigned joins that chorus, and perceives that extensive (and expensive) discovery is unnecessary here.  A <u>Griffin</u>-style affidavit can provide information requested in Items 1(a), 1(b) and 1(d) of the deposition notice.  The Hunt defendants can moot the remaining items in the deposition notice simply by stipulating that the administrator had a direct self-interest in denying Mr. Harris's claim (if such is the case).  The Hunt defendants' briefs intimate that neither action will be

objectionable or onerous to them, while plaintiff's brief hints that plaintiff would find this course of action acceptable.

Therefore, the court's order accompanying this opinion will be couched in terms designed to expedite and simplify these discovery issues.  Specifically, and although the foregoing analysis generally *rejects* the Hunt defendants' arguments, the court will *grant* their motion for protective order conditioned upon their making the above disclosures and stipulation voluntarily.  Otherwise, the motion will be denied.

SIGNED this 27th day of December, 2005.

_Earl S. Hines_
EARL S. HINES
UNITED STATES MAGISTRATE JUDGE